## WHEELER v. CITY OF CHICAGO.

(Circuit Court, N. D. Illinois. May 28, 1895.)

1. PUBLIC LANDS — GRANT IN AID OF ILLINOIS & MICHIGAN CANAL — CONDITIONS.

In 1822 congress passed an act granting certain public lands to the state of Illinois for the purpose of a canal, and providing that a survey should be made in 3 years, and the canal opened in 12 years. In 1827 congress passed another act granting certain other public lands in aid of the canal and extending the time for commencing the canal to 5 years, and for com pleting it to 20 years, after 1827. In 1834 one W. made an entry of part of the granted land, and received a patent therefor. *Held*, that the grants to the state contained in the acts of 1822 and 1827 vested in the state of Illinois at once, the conditions as to filing maps and beginning and completing the canal being conditions subsequent; and W., being bound to take notice of such grants, acquired no title by his entry and patent.

2. CONSTITUTIONAL LAW—SUIT AGAINST STATE.

The state took possession of the granted land, and constructed the canal. In 1881 a joint resolution of the general assembly permitted the city of C. to erect pumping works on a part of the land, to supply water to the upper level of the canal, and such city erected and operated the pumping works accordingly. An action of ejectment was brought against the city by one claiming under the patent to W. *Held*, that the interest of the state in the land did not make the action one against the state, so as to defeat the jurisdiction of the federal court.

This was an action of ejectment by Hiram E. Wheeler against the city of Chicago. The defendant pleaded the general issue and a special plea denying possession. The case was heard by the court without a jury.

The plaintiff sued the city of Chicago, in an action of ejectment, to recover from the city, in fee simple, a piece of ground on section 30, in Canalport, Cook county, Ill., traversed by the bed of the Illinois & Michigan Canal, and including a portion of strips 90 feet in width on each side of the canal. He showed a connected patent title in himself under a cash entry made by one Welsh, in 1834, of a portion of section 30, including the premises demanded. It was shown in defense that the land in question was a part of the Illinois & Michigan Canal, as occupied and used by the canal authorities of the state of Illinois, and that it had been in such actual use since the completion of the canal. It further appeared that the premises in question are a part of the original channel of the canal; that in 1881, under the joint resolution of the general assembly of the state, the city of Chicago was permitted by the canal authorities to erect the pumping works now standing upon the premises, which, ever since their erection, have been in operation, and have caused a flow of water from the south branch of the Chicago river into the canal, thereby supplying the water for the first or summit level of the canal. These pumping works were erected by the city at its own expense, and city employés have since operated them under the provisions of the joint resolution. The city filed a special plea denying possession. The attorney general of Illinois, relying upon the grants to the state mentioned above, and the occupancy of the canal by the state, filed a suggestion for the dismissal of the suit for lack of jurisdiction. The point was made that the suit was practically an action of ejectment against the state to deprive it of a portion of the Illinois & Michigan Canal, and therefore within the prohibition of the eleventh amendment to the constitution of the United States.

Robert B. Kendall, for plaintiff.

Duncan & Gilbert and George L. Paddock, for defendant, and M. T. Moloney, the Attorney General of Illinois.

ALLEN, District Judge. In the common-law case of Wheeler against the city of Chicago, which was tried a couple of weeks ago,

I have reached a conclusion,—not having been able to write anything like an opinion in the matter,—and I thought I had better announce it this morning, it being uncertain how long I may be able to remain here, so the parties to the suit could take such action as they thought proper.

The first matter that my attention was directed to was whether I should take jurisdiction of the case, because of the state being substantially a party, and I heard arguments with pleasure upon that branch of the subject. I am inclined to think that that point ought not to be sustained; that the court ought not to refuse jurisdiction because of the interest that the state has, or the attitude of the state to the case. I reach that conclusion largely upon authorities cited by the defendant in the argument, and from the very nature of the question, and will pass over that view by saying that the court has overruled the jurisdictional point made.

The action is ejectment. There were the general issue and two special pleas. To one of the special pleas a demurrer was sustained. The other, which was held good, was a plea denying possession by the defendant, city of Chicago.

It seems, from the proof in the case, that on March 30, 1822, congress passed an act to the effect "that the state of Illinois be and is hereby authorized to survey and mark through the public lands of the United States, the route of the canal connecting the Illinois river with the southern bend of Lake Michigan, and ninety feet of land on each side of said canal shall be forever reserved from any sale to be made by the United States, except in cases hereinafter provided for; and the use thereof forever shall be and the same is hereby vested in the said state for a canal and for no other purposes whatever." There was a provision in the subsequent sections of that act of 1822 that a survey should be made in 3 years, and that the canal should be opened within 12 years thereafter. Again, March 2, 1827, congress passed another act on the subject, providing that there should be granted to the state of Illinois, "for the purpose of aiding said state in opening a canal to unite the waters of the Mississippi with those of Lake Michigan, a quantity of land equal to one-half of five sections of width on each side of said canal, and reserving each alternate section to the United States," with a proviso that the canal should be commenced within 5 years, and completed within 20 years. Under my view of the case, these grants—that of 1822, authorizing the state to survey through the public lands a route for the canal, connecting the Illinois river with the southern bend of Lake Michigan, granting 90 feet on each side of the canal to the state, and the grant of 1827 to the state, of a quantity of land equal to one-half of five sections in width on each side of said canal, to aid said state in opening a canal to unite the waters of the Illinois river with those of Lake Michigan—must be taken together; those two acts containing these two grants of right of way or strips of land, and land to aid in the construction of this canal to unite the waters of the Illinois river with Lake Michigan. The last act was a clear recognition by congress of the continuing force of the first one, and extended the time for the commencement of the work on the

canal for 5 years from March, 1827, and its completion for 20 years
from that time.    In the view I have taken of the entire case, the
question of possession on the part of the state and its agents—a
continuing possession for 20 years—will not be considered at the
present time.    That presents, or would present, for consideration,
an important question, if the title of the plaintiff were different, or
if it had been affected less by an outstanding title.    The plaintiff,
of course, must recover, if at all, on the strength of his own title.
Assuming, for argument's sake, he has made a prima facie case by
tracing back title to a sale made by the government of the land in
question in October, 1834, to Welsh, the question of outstanding
title must then be considered; that is, if a prima facie case has been
made.    Under the congressional grant of 1822 the strip of land in
dispute became vested in the state of Illinois at once.    A legislative
grant operates as a law as well as for the transfer of the property,
and has such force as the intent of the legislature requires.    I have
no doubt that the title vested in the state at once; that these condi-
tions with reference to commencing the work, and the completion
of the work, were conditions subsequent, and not, as claimed by
plaintiff's counsel, conditions precedent.    They were subsequent
conditions, as I think our supreme court has held in a number of
cases, and the supreme court of the United States in quite a number.
I think it may be regarded as the settled law of the country now
that the conditions as to the filing of the map of the location, etc.,
of the canal, and the commencement of work and completion of the
same, must be classified as conditions subsequent, to be taken ad-
vantage of only by the grantor, or some one under the grantor, and
not to be complained of, or taken advantage of, by any one else.
These conditions were conditions subsequent, to be taken advantage
of only by the grantor, by judicial proceedings authorized by law,
finding the fact of forfeiture, and adjudging the restoration of the
estate, or there must at least be some legislative assertion of the
ownership of the property by the government.    Nothing of that
character appears in the evidence.    The act of 1827 clearly ex-
tended the time for the commencement of the work until 1832 (5
years),—that is my understanding,—and its completion until 1847
(20 years).    In 1829 it is shown in the evidence that Gov. Edwards
forwarded to the department at Washington a copy of the survey
and location of the canal.    That was within two years after this
act of 1827 was passed, and, there never having been a forfeiture,
the grants were in full force and effect; and the state had title cer-
tainly to this strip of land, for I understand this is a part of the 90
feet.    If I am right, then in 1834, when Welsh purchased from the
United States, he was compelled to take notice of the two public
laws referred to and the grants thereunder to the state, and, of
course, could get no title from the government to the 90 feet on
either side of the canal, then and ever since in the possession of the
state for canal purposes.    I understand from the evidence that men
are there now upon the premises sued for, who trace back their au-
thority and claim to the state.    The state having taken possession
and built a canal, there was nothing for the government to grant.

There has been no reversion and no forfeiture, but everything belonging to the government had passed out, so far as this particular 90 feet was concerned. The verdict will be, "Not Guilty."